CIRCLE R, INC. and Thurston Mfg.
Company, Plaintiffs–Appellants,

v.

TRAIL KING INDUSTRIES, INC.,
Defendant–Appellee.

No. 01–1068.

United States Court of Appeals,
Federal Circuit.

Sept. 28, 2001.

Before PAULINE NEWMAN, BRYSON, and DYK, Circuit Judges.

DYK, Circuit Judge.

Circle R, Inc. ("Circle R") and Thurston Manufacturing Company ("Thurston") appeal from the decision of the United States District Court for the District of Nebraska granting the motion of Trail King Industries, Inc. ("Trail King") for summary judgment of non-infringement of U.S. Patent No. 5,480,214 (the " '214 patent"). *Circle R, Inc. v. Trail King Indus., Inc.*, No. 8:98CV281 (D. Neb. June 19, 2000) (unpublished disposition) (*"Circle R I "*). We conclude that, though the district court's grant of summary judgment of non-infringement was based on an erroneous claim construction, it was nonetheless correct in result, and we further conclude that the district court did not commit reversible error in excluding expert witness testimony. We therefore *affirm.*

## BACKGROUND

Circle R owns the '214 patent, which is directed to a side dump trailer that is pivotally mounted on a wheeled frame fashioned so as to enable the material within the trailer body to be dumped from either side of the trailer. The trailers are manufactured and sold by Circle R.

Circle R filed a complaint for infringement of the '214 patent against Trail King on May 26, 1998.[1] On August 11, 1999, the magistrate judge assigned to the case granted Trail King's motion to exclude the testimony of Circle R's expert witness, Mr. Smegal, under Fed.R.Civ.P. 37, on the ground that his written report failed to comply with the requirements of Fed. R.Civ.P. 26(a)(2). In reaching that decision, the magistrate judge stated in pertinent part:

I have reviewed Mr. Smegal's report and find that the report is deficient. As defendant notes in its brief, the ... report merely "alleges in a terse summary format that certain of Trail King's side dumping trailers infringe claims 1, 2, 3 and 5 of the '214 patent owned by Circle R, Inc." The report is indeed presented in a "simplistic claim chart format" and lacks any clear statement of reasoning from which its few conclusions are drawn. ... I conclude that, under the circumstances, plaintiff should be prohibited from calling Mr. Smegal as an expert witness.

*Circle R, Inc. v. Trail King Indus., Inc.*, No. 8:98CV281, slip op. at 7 (Aug. 11, 1999) (Jaudzemis, M.J.). The district court denied Circle R's appeal from that ruling, concluding in pertinent part that the magistrate's order "is not clearly erroneous or contrary to law." *Circle R, Inc. v. Trail King Indus., Inc.*, No. 8:98CV281 (Dec. 29, 1999) (*"Circle R III"*), slip op. at 2.

Ruling on the merits of the action, the district court construed the claims of

---

**1.** Thurston acquired the side dump trailer business of Circle R following the filing of the complaint against Trail King, and was accord-

ingly joined as a co-plaintiff on March 7, 2000. For convenience, we refer to the plaintiffs as "Circle R."

the '214 patent in a November 23, 1999, memorandum and order, which addressed only independent claim 1. *Circle R, Inc. v. Trail King Indus., Inc.*, No. 8:98CV281 (Nov. 23, 1999) (*"Circle R II"*). Claim 1 reads:

1. A side dump trailer, comprising:

an elongated wheeled frame having a forward end, a rearward end, and opposite sides;

a first support on said wheeled frame adjacent the forward end thereof at one side thereof;

a second support on said wheeled frame adjacent the rearward end thereof at one side thereof;

a third support on said wheeled frame adjacent the forward end thereof at the other side thereof;

a fourth support on said wheeled frame adjacent the rearward end thereof at the other side thereof;

an elongated body movably positioned on said wheeled frame and having a forward end, a rearward end, opposite sides, and an open upper end for receiving materials to be transported;

*said body including a substantially flat, horizontally disposed bottom wall* having a forward end, a rearward end, and first and second opposite side edges;

said body also including an upstanding forward wall member, an upstanding rearward wall, and first and second side walls which extend upwardly and outwardly from the first and second side edges of said bottom wall;

a first, horizontally disposed pivot pin secured to said first side wall of said body adjacent the forward end thereof adapted to be removably and pivotally received by said first support;

a second, horizontally disposed pivot pin secured to said first side wall of said body adjacent the rearward end thereof adapted to be removably and pivotally received by said second support;

a third, horizontally disposed pivot pin secured to said second side wall of said body adjacent the forward end thereof adapted to be removably and pivotally received by said third support;

a fourth, horizontally disposed pivot pin secured to said second side wall of said body adjacent the rearward end thereof adapted to be removably and pivotally received by said fourth support;

said first, second, third and fourth pivot pins being elongated and having their axes disposed parallel to the length of said body and said wheeled frame;

said first, second, third and fourth pivot pins being positioned on the respective side walls above said bottom wall and outwardly of said side walls;

first, second, third and fourth locking devices selectively movable between locked and unlocked positions for selectively maintaining said first, second, third and fourth pivot pins in said first, second, third and fourth supports respectively when in their locked positions;

a first power cylinder having a base end pivotally secured to said wheeled frame intermediate the sides thereof forwardly of said body and a rod end pivotally secured to said forward wall member of said body intermediate the sides thereof;

a second power cylinder having a base end pivotally secured to said wheeled frame intermediate the sides thereof rearwardly of said body and a rod end pivotally secured to said rearward wall of said body intermediate the sides thereof;

and means for simultaneously selectively extending the rods of said first and second power cylinders whereby

said body will dump the material therein from said one side of said body when said first and second locking devices are in their locked positions and said third and fourth locking devices are in their unlocked positions and whereby said body will dump the material therein from said other side of said body when said third and fourth locking devices are in their locked positions and said first and second locking devices are in their said unlocked positions;

the angular relationship of said side walls with respect to said bottom wall, together with the relationship of said pivot pins with respect to said side walls and said bottom wall, enabling the material in said body to be dumped therefrom, when positioned in its dumping positions, without the necessity of pivotally moving said body greater than 90° from its non-dumping position.

'214 patent, col. 5, I. 46—col. 6, I. 60 (emphasis added). It is the interpretation of the phrase "substantially flat" that is at issue here.

"Trail King [asserted] that the court should construe the 'substantially flat' limitation to mean 'entirely flat.'" *Circle R II,* slip op. at 3–4.[2] Circle R, in opposition, urged that the court construe the limitation to mean "largely, but not wholly, flat." *Id.,* slip op. at 4. The district court adopted Trail King's construction, and stated in pertinent part that "[t]his construction is supported by the fact that nowhere in the '214 patent is the bottom wall depicted as anything but completely flat." *Id.*

Trail King subsequently moved for summary judgment of non-infringement, arguing that "because Trail King's accused trailers do not have entirely flat bottoms, they cannot infringe the '214 patent." *Circle R I,* slip op. at 1–2. The district court

granted Trail King's motion for summary judgment, reasoning first that the accused device did not literally infringe, on the ground that "[t]he accused devices lack bottom walls that are entirely flat," and thus "no reasonable fact finder could determine that the accused devices meet every limitation of the properly construed claims." *Id.,* slip op. at 4. The court similarly concluded that Trail King did not infringe under the doctrine of equivalents, as "no reasonable jury could conclude that the accused device's curved bottom wall was substantially similar to the completely flat bottom wall of Circle R's side-dumping trailers described in claim 1 of the '214 patent." *Id.,* slip op. at 6. After a remand from this court, *Circle R, Inc. v. Trail King Industries,* 243 F.3d 556, 2000 WL 1229004 (Fed.Cir.2000) (unpublished decision), the district court entered a final judgment. This timely appeal followed.

## DISCUSSION

### I

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1). We review a district court's grant of a motion for summary judgment without deference. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.,* 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed. Cir.1998).

A patent infringement analysis requires two steps. *Pall Corp. v. PTI Techns., Inc.,* 259 F.3d 1383, 1389 (Fed.Cir.2001). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476, 45 USPQ2d

---

**2.** We find it puzzling that at oral argument on this appeal, Trail King claimed that it had *not*

urged the district court to construe "substantially flat" to mean "entirely flat."

1498, 1500 (Fed.Cir.1998). Claim construction is a matter of law that is reviewed without deference. *Cybor Corp. v. FAS Techns., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir.1998) (en banc).

## II

■ As noted above, the district court construed the claim term "substantially flat" to require that the bottom wall or bed of the trailer be "entirely flat" largely because the specification showed only embodiments that were, in the district court's view, entirely flat.

■ The district court's "entirely flat" claim construction was erroneous. We recognize that "[c]laims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, (1996); but it is also well-established that, as a general rule, "[w]ords in a claim will be given their ordinary and accustomed meaning, unless it appears that the inventor used them differently." *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984) (internal quotations omitted). Here the "ordinary and accustomed meaning" of the word "substantially," as reflected in dictionary definitions,[3] as "considerable in ... extent," American Heritage Dictionary Second College Edition 1213 (2d ed.1982), or "largely but not wholly that which is specified," Webster's Ninth New Collegiate Dictionary 1176 (9th ed.1983). *See also York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1572–73, 40 USPQ2d 1619, 1622 (Fed.Cir.1996)

(construing "substantially the entire height" as "most of the entire height"); *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562, 38 USPQ2d 1471, 1476 (Fed. Cir.1996) (construing "substantially vertical" faces to mean "well-defined faces that *deviate* only slightly, if at all, from the vertical") (emphasis added). In other words, a claim term is not limited to the preferred embodiments, and "[t]he specification here does not define any of the disputed claim language in a manner inconsistent with its ordinary meaning." *Pall Corp.*, 259 F.3d at 1391. Thus, the district court erred when it concluded that the specification required the phrase "substantially flat" be construed to mean "entirely flat."

■ However, during the prosecution of the '214 patent the patentee confronted a rejection of claim 1 by the examiner because the prior art of U.S. Patent No. 4,494,798 (the *"Bailey* patent") showed a similar side dumping trailer body. The *Bailey* patent, among other things, specified a side dumping trailer body having a bottom wall that "comprises a section of an ellipse." *Circle R I*, slip op. at 5. The examiner accordingly rejected a number of Circle R's claims "as being anticipated by Bailey."

In response to that rejection, Circle R informed the examiner that "[a]lthough applicant sincerely believes that claim 1, as originally presented, did define patentable subject matter, claim 1 has been rewritten as claim 6 with certain limitations added thereto to clearly distinguish Bailey." Circle R stated in pertinent part that:

*Claim 6 now describes that the body of applicant's structure includes a sub-*

---

**3.** Dictionaries may be relied on by the court to determine the meaning of the claim terms "so long as the dictionary definition does not contradict any definition found in or ascer-

tained by a reading of the patent documents." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n. 6, 39 USPQ2d 1573, 1578 n .3 (Fed.Cir.1996).

*stantially flat, horizontally disposed bottom wall .... The relationship which has been now described in claim 6 clearly distinguishes Bailey.*

(emphasis added). The claim thus amended was allowed, and issued as claim 1 of the '214 patent.

Under these circumstances we conclude that "substantially flat" must mean that the bottom wall is flatter than Bailey. *See*

*Southwall Techns., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed.Cir.1995) ("Arguments and amendments made during the prosecution of a patent application and other aspects of the prosecution history ... must be examined to determine the meaning of terms in the claims.") Bailey shows the bottom wall as indicated by reference number 11 in Figure 4 as follows:

**FIG.—4**

■ The engineering drawing depicting the accused device clearly shows that the bottom wall of the allegedly infringing device is more curved than the bottom wall in the Bailey patent. Therefore, under our claim construction that "substantially flat" means flatter than the bottom wall in the Bailey patent, Circle R cannot establish literal infringement. So too the prosecution history forecloses Circle R's reliance on the doctrine of equivalents. Having narrowed the scope of the claim during prosecution for reasons related to patentability, Circle R cannot attempt to recapture the surrendered subject matter through the doctrine of equivalents. *Festo*

*Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 574 56 USPQ2d 1865, 1877 (Fed.Cir.2000) (en banc), *cert. granted,* —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001) (No. 00–1543). Under these circumstances we conclude that the grant of summary judgment, though based on an erroneous claim construction, was correct in result.[4]

**III**

■ Circle R also urges that the district court abused its discretion when it adopted the magistrate judge's recommendation to exclude Mr. Smegal's testimony. But we cannot conclude here that the district

---

4. We note that neither Circle R's complaint, nor the district court's order, specified which claims of the '214 patent were alleged to be infringed. However, because the accused products concededly do not fall within the limitations of independent claim 1, the products also cannot infringe any of the other claims, which all depend from claim 1.

court committed reversible error in that regard. In any event, Mr. Smegal's report (which merely compares the claims of the '214 patent to the allegedly infringing device) is not relevant to the claim construction performed by the district court or to the issue of prosecution history estoppel, and thus its exclusion, even if error, was harmless.

## CONCLUSION

The decision of the United States District Court for the District of Nebraska is *affirmed.*

## COSTS

No costs.